Pearson, J.
 

 The plaintiff, Mrs. Allen, was the widow of Ambrose Mills, who died in 1848, leaving a will, by which he bequeaths as follows:
 

 “ Thirdly : I give to my beloved wife the right and privilege of residing in my mansion house, together with the use of a sufficient quantity of adjoining land to support her well and comfortably during her life, (and if she desires it, to have one third of my lands laid off to her during her life.) But it is m.y wish, that the whole of my lands, intended for her support, should be in the possession and under the control and management of my son William, as it is to be his after death, by satisfying and supporting her. I also give her a negro girl Maria absolutely ; also old Grey and Milly, his wife, and Maria’s four children, Button, Larkin,
 
 *277
 
 Mack and George, and the following stock, to wit: two horses, four cows and calves, ten sheep and twenty hogs, to be selected by her out of the stock in hand, during her ■life, and, at her death, the stock to be equally divided between, &c., “ and Button, Larkin, Mack and George, to be divided between,” &c. By another clause he gives her two beds and furniture, and a bureau; and he devises the «¡home place and the lands adjoining to his son William E. Mills, “ subject to the support of his mother for life, as before provided.”
 

 William E. Mills was appointed executor. He qualified and assented to the legacies.' In January, 1849, Mrs. Mills and William E. Mills executed the following deed :
 

 “STATE OF NORTH CAROLINA — Polk County.
 

 “ This agreement made and entered into this.. 1st day of January, 1849, between Ann F. Mills of tKe"one part, and William E. Mills of the other part, witnesseth: That, whereas, by the provisions of the last will and testament of Ambrose Mills, deceased, the said William is to have the possession and control of the real and personal property left to the said Ann F. (or Nancy, as she is called in the,will,) his mother, by supporting her well and comfortably during her life, now it is agreed by the said William and Ann for the mutual benefit of each other, and in order that there shall be no misunderstanding hereafter by any of the, parties interested — the said William will and he does hereby give up and surrender to his said mother, Ann F., two rooms in the late dwelling house of the said Ambrose for her separate use, and over which she is to have the entire management and control, and in which she is to keep her own beds and furniture. He also gives her the entire use and control of a negro girl, Maria, to wait on her, clothe herself and negro children, and to do any thing and every thing she may wish and direct. And the said William doth further agree and bind himself to support his said mother and her negroes well and comfortably during her life — that is, he is to furnish all the provisions and necessaries at his own expense, and his said mother is to come to his table as one of the family, without any trouble and expense on her
 
 *278
 
 part; and he is also to furnish her with a horse to ride whenever she desires it.
 

 And the said Ann F- Mills does hereby covenant and agree on her part, for and in consideration of the foregoing stipulations, to surrender, and she does hereby surrender and give up and relinquish to the said William all the remainder of the dwelling house, lands and negroes, for the entire management and control of said property left to her under the said will; and she does also surrender unto the said William all her part of the stock absolutely to manage and'" do with as he pleases, the said William being bound as before stated, to support his mother well during her life or so long as they may live together. And we, the said Ann F. and William E. do hereby bind ourselves to each other, our heirs, executors and administrators, well and truly to perform the foregoing covenants and agreements. In witness whereof, we have herewith
 
 set■ our
 
 hands and seals, the day and date above written.
 

 “ANN F. MILLS, [seal.]
 

 “WILLIAM E.MILLS, [seal.]
 

 The parties acted under this deed until August, 1850, when William E. Mills died, leaving him surviving a widow and three infant children, who are defendants, and leaving a last will and testament, by which he gives his estate to his widow and children. The will was duly proven, and the defendants, Bryan and Mills, were appointed administrators with the will annexed. Soon after the death of William E., the plaintiff, Mrs. Mills, intermarried with the other plaintiff, Allen, and a controve? sy arising as to the legal effect of the deed, this bill was filed. The plaintiffs insist, that the intent ofthe deed was to make a mere temporary arrangement, by which to define the rights of the parties, for their mutual satisfaction; which arrangement was to be revocable at the pleasure of either party, and was, as a matter of course, to be at an end upon the death of William E. Mills, whose
 
 personal service,
 
 in taking charge of, and managing, the property, and the right to “come to his table as one of the family,” (the consideration which induced the plaintiff, Mrs. Allen, to enter into the
 
 *279
 
 agreement,) could no longer be rendered or enjoyed. And' the plaintiffs insist, that, if the legal effect of the deed is to vest all of the interest and estate of Mrs. Allen in William E. Mills, as his property, the deed ought to be declared void and of no effect; because, it was executed in ignorance of her rights, was obtained by surprise and without consideration, and - by the exercise of an influence growing out or the relation in which the parties stood to each other. The prayer is for an account, and a surrender and rc-conveyance of all interest or estate acquired by William E. Mills, under the deed, and an allotment of one-third* of the land of her deceased husband.
 

 The defendants deny, that the deed was intended as a mere temporary arrangement, and lost its binding force and effect by the death of William E. Mills. On the contrary, they insist, that its legal effect was to vest in him, as his property, all the interest and estate of the plaintiff, Mrs. Allen, in the land, negroes and stock, to which she was entitled under the will of her former husband. They deny, that she was ignorant of her rights, surprised, or in any way unduly influenced; and they aver, that the agreement was fair and reasonable, for the consideration therein expressed. They further aver, that none of the negroes, except the woman, Maria, could have been hired for anything, Grey and his wife being very old, and the four boys being between the ages of eleven and five years; and Mrs. Allen had no means of providing for the support either of the ne-groes or of the stock; so that, if she had kept them, she would have been compelled to go in debt, and “would, probably, (almost inevitably,) be so deeply insolvent for their support, that she would be compelled to sell them, and leave herself without support in her old age, dependent upon the .bounty of her friends. These things she often repeated to William E. Mills, and importuned him to take a conveyance.of all of her property, except Maria and the two beds and bureau, and bind himself to support her; and, in par-
 
 *280
 
 suance of her urgent solicitations, the deed was executed. They insist on their rights.
 

 Replication was taken, and the cause set down to be heard.
 

 The plaintiffs are entitled to the relief prayed for. Adopting the construction contended for by the defendants, the deed cannot in this court be set up as a bar to the plaintiffs’ rights, for three reasons. First: It was executed by Mrs. Allen in ignorance of her rights. It contains a recital, that William E. Mills, by the will of Ambrose Mills, “ is to have the possession and control of the real and personal.property left to the said Ann, by supporting her comfortably during her life.” Here is an entire mistake, so far as the personal property is concerned. Again, she supposed she had no means of supporting her negroes and feeding the stock — in fact, according to the answer, she thought she was at the point oí starvation, and in danger of becoming the object of charity; whereas, by the will, she had a right to use a sufficient quantity of the land to support herself “ well and comfortablywhich, of course, gave hej the right to use enough of the land to keep up her establishment, and to support the hands and stock, necessary for its proper cultivation and enjoyment, as a means necessary to support herself well and comfortably.
 

 Second : The deed was obtained by surprise and without consideration. Under the will, she had a right to reside in the mansion house, to use enough of the land to support herself and keep up her establishment. Maria was a good hand. Two of the negroes were old, but four were just becoming valuable; and she had two horses, cows, sheep, and hogs. All this she transferred, for what consideration ? The use of two rooms in the mansion house, the right to sit' at the table, the use of a riding horse, and the use of Maria, as a waiting maid, but Maria was to clothe herself and the four boys, her children; and William E. Mills was to support her and the negroes — “ that is, hé is
 
 *281
 
 to furnish all the provisions and necessaries at his own expense and is to have the use of the negroes, horses and stock absolutely. This cgse falls precisely under the decision of
 
 Turnage
 
 v Turnage, 7 Ire. Eq. 127. There, Elias Turnage, being entitled to some negroes, receives two of them and in consideration thereof, executes a release for all the negroes bequeathed. The Court say: “ It is a clear case of surprise ; being entitled to four negroes, he receives two of them and executes a receipt in full. If the two received had been other than those he was entitled to, and of more value, it might have amounted to a satisfaction; but, as they were two of the four, it is impossible to hold, that it was in satisfaction of the four.” It may be added, the security of the plaintiff was weakened ; for, she gave up a charge on the land and accepted instead thereof, a personal covenant, and put it in the power of William E. Mills, to convey the land free of the charge.
 

 Third : The relation of the parties — that of trustee and
 
 cestui que trust
 
 — is a conclusive reason. Dealings between a trustee and
 
 cestui que trust,
 
 in reference to the trust fund, are not prohibited, but are watched in this Court with great jealousy, and the trustee is required to show affirmatively, that the dealing was fair and for a reasonable consideration, so as to exclude all suspicion, that any advantage was taken of the influence, which the relation in most cases creates ;
 
 Boyd
 
 v
 
 Hawkins, 2
 
 Dev. Eq. 195.
 

 We are also of opinion, that nothing has been done amounting to an election on the part of Mrs. Allen. The deed certainly cannot have that effect. She conveys her interest in general terms, so as to pass the right to one third of the land, or the right to a support, which was charged on the land ; which made election unnecessary.
 

 The plaintiffs are entitled to one third of the land allotted to them for the life of Mrs. Allen, (she having by the bill made an election to have the land,) and to have the negroes surrendered to them, and to an account of the pro
 
 *282
 
 fit's of the third of the land and of the negroes, from the death of William E. Mills; and also to an account of the value of the horses, cattle, sheep, and hogs, at the date of the deed, with interest upon such value from the death of said Mills, up to which time the agreement was acted on, and Mills was entitled to the use of the property, and the increase of the stock.
 

 Per Curiam. Decree accordingly.